Beverly GARNER, Plaintiff–Appellant,

v.

George REED, d/b/a Reed's BBQ,
Defendant–Appellee.

Supreme Court of Tennessee,
at Nashville.

May 24, 1993.

Rehearing Denied June 28, 1993.

Don R. Ash, Murfreesboro, for plaintiff-appellant.

Robert D. Massey, Pulaski, for defendant-appellee.

*OPINION*

DROWOTA, Justice.

In this workers' compensation case, Beverly Garner, Plaintiff–Appellant, has appealed from the trial court's finding that George Reed, d/b/a Reed's BBQ, Defendant–Appellee, did not employ the requisite number of persons to invoke the provisions of the Workers' Compensation Law, T.C.A. § 50–6–101 et seq. The issue presented is whether Reed's BBQ employed five or

more persons at any one time prior to the Plaintiff's injury on July 27, 1990. There is apparently no dispute that the Plaintiff's injury would be compensable if the workers' compensation scheme applies.

We hold that an individual who provides services but never receives a wage or salary, or other compensation in any form whatever for his services, is merely a gratuitous worker and may not be counted as a person regularly employed for purposes of T.C.A. § 50–6–106(4). Nonetheless, we find that Reed's BBQ employed five or more persons prior to the Plaintiff's injury on July 27, 1990. The judgment of the trial court is therefore reversed and the case remanded.

## I.

The Plaintiff, who worked as a helper in the preparation and sale of barbecue at Reed's BBQ, injured her back on July 27, 1990, while lifting a pan of barbecue at work. She incurred approximately $15,-715.00 in medical bills and seeks to recover these expenses, along with disability benefits, as provided for under the Workers' Compensation Law. The Defendant asserts that he is not liable for any workers' compensation benefits because he never had five or more persons on the payroll at the same time before the Plaintiff was injured on July 27, 1990. The trial court agreed with the Defendant and dismissed the case. The trial court found that Reed's BBQ had employed four persons, but not the requisite five. The Defendant has no quarrel with the proposition that he had four individuals on the payroll at the same time prior to Plaintiff's injury.

The record reveals that in May, 1990, the Defendant, George Reed, and his brother, Dillard Reed, Sr., opened a small barbecue store in Pulaski, known as Reed's BBQ. The business was started so that their children would have a way of making a living when they got older, instead of having to work hard, manual labor like George and Dillard, Sr., had to do. George supplied the necessary funds to start the business, and Dillard, Sr., provided the needed experience in preparing and selling barbecue.

Dillard, Sr., also managed the daily affairs of the business, sometimes working more than 14 hours a day. Dillard, Sr., was not paid for his services. The business license for Reed's BBQ was in the name of George Reed, the Defendant. George also owned another business, The Country Club, a bar, which purchased barbecue from Reed's BBQ. Neither business was incorporated. The two businesses were treated as one on George's 1990 federal income tax return, George obtaining a tax benefit by doing so.

The Plaintiff began working for Reed's BBQ upon its opening in May, 1990. Payroll and tax records show that, between time the business opened in May, and the Plaintiff's injury in July, Reed's BBQ employed three persons who worked at the same time: the Plaintiff, Sherry Camp, and Timothy Reed (24–year–old son of Dillard, Sr.). At various times during this same period, other individuals worked at the store as well: Tammy Garner, Dillard Reed, Jr. (18–year–old son of Dillard, Sr.), Angie Reed (former wife of Timothy Reed), and an individual by the name of Rhonda Poff. Thus, the payroll and tax records of Reed's BBQ clearly reflect four persons who worked at the same time before the Plaintiff was injured on July 27, 1990. The question presented is whether there was a fifth employee so as to trigger application of the Workers' Compensation Law.

## II.

■ T.C.A. § 50–6–102(a)(3)(A) defines "employee" to include "every person ... in the service of an employer ... under any contract of hire or apprenticeship, written or implied." The term "employer," as it is defined in T.C.A. § 50–6–102(a)(4), "includes any individual, firm, association or corporation ... using the services of not less than five (5) persons for pay...." Unless there are five or more "persons [who] are regularly employed," the Workers' Compensation Law will not apply. T.C.A. § 50–6–106(4). This Court has held that "on the first day that five or more persons, who may be classified as regular employees under the act, work for an employer, coverage attaches and may not be with-

drawn in subsequent days solely by the device of reducing the work force to four or less." *Whitehead v. Watkins*, 741 S.W.2d 327, 328 (Tenn.1987) (quoting *Ganus v. Asher*, 561 S.W.2d 756, 759 (Tenn. 1978)). The burden is upon the employee to prove by a preponderance of the evidence that the employer had the requisite number of "persons regularly employed". *Winchester v. Seay*, 219 Tenn. 321, 409 S.W.2d 378, 381 (1966); *King v. Buckeye Cotton Oil Co.*, 155 Tenn. 491, 296 S.W. 3, 7 (1927).

With regard to the word "hire," contained in T.C.A. § 50–6–102(a)(3)(A), it has been observed:

> The word 'hire' imports remuneration or compensation. *The American Heritage Dictionary of the English Language* defines the word 'hire,' a transitive verb, as follows:
>
> 1. To engage the services of (a person) for a fee; to employ. 2. To engage the temporary use of (something) for a fee; to rent; hire a car for the day. 3. To grant the services or allow the use of for remuneration; to rent out. Often used with out: I hire out my country home for the summer—hire out: To grant one's services in exchange for compensation: He hires out as a field hand when work is slow on his farm.
>
> When used as a noun, the word 'hire' is defined as follows:
>
> 1. The payment for services or use of something. 2. The act of hiring. 3. The condition or fact of being hired— for hire. Available for use or services in exchange for compensation.
>
> In order for one to be an employee of another for purposes of our Worker's Compensation Law, it is, therefore, required that there be an express or implied agreement for the alleged employer to remunerate the alleged employee for his services in behalf of the former.

\*   \*   \*   \*   \*   \*

Our conclusion in this respect is not unique. Indeed, the law generally appears to be in accord. Thus, at 99 C.J.S. *Workmen's Compensation* § 64 (1958) we find the following statement:

> In order that a person may be an employee under a compensation act, it is essential that some consideration be paid or payable to him, services gratuitously performed creating no liability, and some of the definitions of 'employer,' 'employee,' and related terms in the compensation acts contain the element of pay for service.

The quoted statement is supported by citations to decisions from many other states. *See also* 81 Am.Jur.2d *Workmen's Compensation* § 156 (1976) and cases there cited.

*Black v. Dance*, 643 S.W.2d 654, 657 (Tenn. 1982).

In *Hill v. King*, 663 S.W.2d 435 (Tenn. App.1983), damages were sought by the family of Willard Hill who was killed while riding in an airplane being used by the sheriff of Robertson County to transport a prisoner. The question in the case was whether Hill was an employee within the meaning of the Workers' Compensation Law so as to limit recovery to benefits provided for under the workers' compensation statutes. Hill, a retired truck driver and former salaried deputy sheriff, had offered to "help out" the sheriff as a volunteer, without pay, and the sheriff accepted his offer. Hill was supplied with a pistol, uniform and badge, and worked whenever he wanted and was needed. Hill never received a salary. He wanted to work for the sheriff because he wanted to help out and enjoyed the memories it brought back in light of his former experience as a police officer. He was killed riding in the sheriff's airplane when it crashed. The Court held that Hill was not an employee as defined by the Workers' Compensation Law because he did not receive valuable consideration for his services. Thus, his remedy was not governed by the workers' compensation statutes.

In Professor Larson's often cited treatise on workers' compensation law, *Larson's Workmen's Compensation Law*, he notes that most states, like Tennessee, "insist upon the existence of a contract for hire,

express or implied, as an essential feature of the employment relation." 1B *Larson's Workmen's Compensation Law*, § 47.10, p. 8–145. Larson explains that

> [t]he word 'hire' connotes payment of some kind. By contrast with the common law of master and servant, which recognized the possibility of having a gratuitous servant, the compensation decisions uniformly exclude from the definition of 'employee' workers who neither receive nor expect to receive any kind of pay for their services.

> \* \* \* \* \* \*

The element of payment, to satisfy the requirement of a contract of hire, need not be in money, but may be in anything of value. Board, room, and training, such as might be furnished to a student nurse or hospital intern, are treated as the equivalent of wages. Indeed, food and lodging have figured as payment in as diverse employments as college football and county prisoner. And even refreshments which were the sole payment given a casual porter for the odd jobs he did, were held sufficient to sustain a finding of employment. On the other hand, mere gratuities or gifts, unless understood by the parties to constitute the equivalent of wages, are not considered payment under a contract of hire. The same is true of various discounts that may go with claimant's position....

*Id.* at § 47.41, p. 8–162, § 47.43(a), pp. 8–183 through 8–185. Thus, the generally accepted view appears to be that gratuitous workers are not employees, since the element of "hire" is lacking. However, payment may be found in anything of value, which may or may not be wages or a salary.

In determining which persons are to be counted in deciding whether the minimum number of employees exist to invoke the workers' compensation statutes, Larson observes that

[i]f the term 'employees' is used in the statute, this is construed to exclude from the enumeration any persons who are not employees for compensational purposes.... But if the term chosen by the draftsmen is 'persons' or 'workmen,' ... the count may not be confined to covered employees. 'Persons,' for example, has been extended to the helper of an employee, and 'workmen' to a gratuitous worker, although in neither case would the person counted be considered an employee for compensation purposes generally.

*Id.* at § 52.31, pp. 9–97 through 9–99.

We note that T.C.A. § 50–6–106(4) uses the term "persons" to be counted when deciding whether the workers' compensation statutes apply. The Legislature did not use the term "employee" but rather the phrase "persons [who] are regularly employed." T.C.A. § 50–6–106(4). By doing so, the Legislature apparently intended for the definition of employee, as that term is defined in T.C.A. § 50–6–102(a)(3)(A), to control for purposes of deciding the applicability of the workers' compensation statutes. Thus, helpers or gratuitous workers, such as Dillard, Sr., are not to be counted. Dillard, Sr. worked full-time (and then some) at Reed's BBQ but was never paid a wage or salary for his services. The record is devoid of any other type of consideration that may have been received by Dillard, Sr. The Plaintiff has not carried her burden of demonstrating that Dillard, Sr. was anything other than a gratuitous worker, for he was not compensated, nor did he receive any consideration for his services, in any form whatever. Therefore, Dillard, Sr. cannot be counted as a person who was regularly employed for purposes of T.C.A. § 50–6–106(4).[1]

### III.

The trial court, relying on the records of the business, i.e., the employer's quarterly

---

1. We are cognizant of the inequity that this approach can lead to in situations where, for example, an employer uses family members to "help out" on a full-time basis without pay, merely to keep from reaching the requisite number of employed persons, thereby leaving unprotected workers who sustain disabling injuries while on the job. This argument, however, must be made to the Legislature, not to the courts, in view of the language contained in T.C.A. § 50–6–106(4) ("persons [who] are regularly *employed*").

federal tax returns and payroll records, found that there had been three employees (Plaintiff, Sherry Camp and Timothy Reed) who worked at Reed's BBQ consistently from the time it opened to the date of Plaintiff's injury. The trial court, relying on the records, also found that other individuals (Tammy Garner, Dillard Reed, Jr., Angie Reed, and Rhonda Poff) worked at the store at various times during this same period. Thus, there is no question that Reed's BBQ had at least four employees working at the same time.

■ In counting the number of individuals for purposes of deciding whether the Workers' Compensation Law applies, we are reluctant to place dispositive emphasis on the business records alone under the facts presented here. First, everyone who ever worked at Reed's BBQ was paid in cash, not by check. Second, and more importantly, there is some question about the reliability of the business records themselves. For example, although the payroll book shows that Patricia Reed, wife of Dillard Reed, Sr., worked and was paid in August, 1990, the employer's quarterly federal tax return for the same period omits any reference to her whatever. Other discrepancies in the business records were noted by the trial court. The trial court even observed that "the difficulty with the case from the start is in the less than adequate record keeping...." Dillard Reed, Sr., who managed Reed's BBQ and kept its records, admitted he does not report his income accurately. He described himself as a "trader" by profession. Moreover, George Reed testified that the Plaintiff, Timothy Reed, and Sherry Camp, were never even employed by him because he never owned Reed's BBQ, despite having invested his life's savings into the business, purchasing equipment and leasing the building, maintaining the business license in his name, and claiming the business as his own on his 1990 federal income tax return. The Defendant's testimony in this regard is also at odds with his answer filed to the complaint and a stipulation made by his lawyer at trial. The point is simply that we hesitate to treat the business records themselves as dispositive of the issue presented given the circumstances taken as a whole.

■ Going beyond just the business records, and taking into account the testimony, the proof in this case persuades us that Patricia Reed was regularly employed by Reed's BBQ prior to Plaintiff's injury. The Plaintiff testified that Patricia Reed worked the week of July 4, 1990, a particularly busy time at the store. In reference to that week, Plaintiff testified on direct examination:

Q. To your knowledge, to your own knowledge now, not from what someone else has told you, but who else do you know for a fact got paid for working out there?

A. Sherry Camp, Tammy Garner, Dillard, Jr., Tim Reed, Angie Reed and Pat. [Patricia Reed]

Q. Pat; how do you know that she got paid?

A. Because I saw her.

Q. You saw what?

A. She paid herself.

Q. Cash?

A. Yes, Sir.

Q. Out of the register?

A. No, Sir. It was a—she come in one day and she said she forgot to get her pay from the previous week and it was a blue bank bag on the deep freeze, and she was over toward the window and she walked from the window to the deep freeze and got it out of that blue bag.

On cross-examination, the Plaintiff testified:

Q. And as far as Pat being paid, you say that on occasion you saw her reach into the money bag and say, "I didn't pay myself"?

A. Yes, Sir.

One of the other employees, Sherry Camp, confirmed that Patricia Reed worked at the store while Plaintiff was working there. Dillard Reed, Sr., stated that Patricia Reed did not get paid until Plaintiff was hurt as evidenced by the payroll book. However, Dillard Reed, Sr., acknowledged that "she takes care of her money and I take care of

mine. I don't know anything about what she does. It's kind of a strange situation we're in." Patricia Reed herself admitted taking cash out of the "money bag" before Plaintiff was injured, but insists that it was only to reimburse herself for money spent running errands for the store. She did not address the specific statement made to the Plaintiff that she had forgotten to pay herself for the previous week's work. We conclude that Patricia Reed can be counted as the fifth employee for purposes of T.C.A. § 50-6-106(4).[2]

There is also proof that Angie Reed was regularly employed by the store with the Plaintiff, Tammy Garner, Sherry Camp, and Timothy Reed. The Plaintiff testified that Angie Reed worked while she did at Reed's BBQ. The affidavit of Tammy Garner, accepted by the trial court as part of the record, confirms this, and also relates that Tammy Garner overheard a conversation between Timothy Reed and Angie Reed discussing "how each was being paid for his or her respective services at Reed's BBQ." Tammy Garner testified that during her employment at Reed's BBQ (the end of May and the first two weeks of June) Angie Reed would come in "virtually every day" and work. Thus, even excluding Patricia Reed, there were five persons regularly employed by the store at the same time prior to Plaintiff's injury.

We conclude that Reed's BBQ employed five or more persons for purposes of T.C.A. § 50-6-106(4). This conclusion makes it unnecessary for us to decide whether two businesses owned by the same employer can be combined for purposes of counting persons under T.C.A. § 50-6-106(4). *See Buck & Simmons Auto & Electric Supply v. Kesterson,* 194 Tenn. 115, 250 S.W.2d 39 (1952); *Threet v. Cox,* 189 Tenn. 477, 226 S.W.2d 86 (1949).

The judgment of the trial court is reversed and the case remanded for proceedings consistent with this opinion. Costs are taxed against the Defendant.

**2.** The other four employees included the Plaintiff, Sherry Camp, Timothy Reed and Dillard

REID, C.J., DAUGHTREY and ANDERSON, JJ., and LEWIS, Special Judge, concur.