IN THE COURT OF APPEALS

AT NASHVILLE

<table>
<tr><td>WAVELYN E. NORRIS,</td><td>) C/A NO. 01A01-9709-CV-00506</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>) APPEAL AS OF RIGHT FROM THE</td></tr>
<tr><td>v.</td><td>) MONTGOMERY COUNTY CIRCUIT COURT</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>DORA PRUITTE,</td><td>)</td></tr>
<tr><td></td><td>) HONORABLE JAMES E. WALTON,</td></tr>
<tr><td>Defendant-Appellee.</td><td>) JUDGE</td></tr>
</table>

**FILED**

**August 24, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

For Appellant

HERBERT E. PATRICK
Clarksville, Tennessee

GREGORY D. SMITH
Clarksville, Tennessee

HAROLD M. JOHNS
Elkton, Kentucky

For Appellee

DAN L. NOLAN
DAVID J. SILVUS
Batson, Nolan, Brice,
  Harvey & Williamson, PLLC
Clarksville, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                                   Susano, J.

The plaintiff, Wavelyn E. Norris, sued her employer, Dora Pruitte, seeking damages for personal injuries sustained during the course of her employment.  The plaintiff brought suit on a theory of common law negligence since her employment is not covered by the Workers' Compensation Law.[1]  The trial court granted Ms. Pruitte's motion for summary judgment, and the plaintiff appealed.  She argues that genuine issues of material fact exist that make summary judgment inappropriate.

The plaintiff was hired in July, 1994, as a care-giver for Ms. Pruitte, who had undergone surgery for a brain aneurism the previous July.  The plaintiff stayed with, and attended to the needs of, Ms. Pruitte from 4 p.m. Sunday to 4 p.m. Friday.  Another person was employed to care for her needs on the weekends.

On March 7, 1995, Ms. Pruitte directed the plaintiff to go outside to get her mail.  It was raining at the time.  After the plaintiff retrieved the mail from the mailbox, she was returning to the house when she was caught by a gust of wind that caused her umbrella to collapse around her head, forcing her to lose her balance and fall to the concrete.  As a result of the fall, the plaintiff suffered serious injuries.

Ms. Pruitte's motion is supported by the deposition of the plaintiff, as well as those of Ms. Pruitte's children, R.H. Pruitte, Jr., age 58, and Linda Suchman.  Apparently, Ms. Pruitte

---

[1]*See* T.C.A. §§ 50-6-102(a)(3)(A) and 50-6-102(a)(4).  *See also* **Garner v. Reed**, 856 S.W.2d 698, 699 (Tenn. 1993).

was not deposed; in any event, her testimony was not presented to the trial court. The testimony of the plaintiff is the only proof in the record regarding the events of March 7, 1995.

We begin our analysis by referring to Rule 56.04, Tenn.R.Civ.P., the procedural rule that sets forth the general standard by which a motion for summary judgment is to be evaluated. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. A court faced with a motion for summary judgment is required to consider the motion in the same light as a motion for directed verdict made at the close of the plaintiff's proof, *i.e.*, "the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993). Since our review involves only a question of law, no presumption of correctness attaches to the trial court's judgment. *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 44 (Tenn.App. 1993).

At the outset, we acknowledge that there is arguably a dispute in the record regarding Ms. Pruitte's mental competence on March 7, 1995, and the extent of her authority to direct the actions of the plaintiff; however, these disputes do not preclude a summary disposition in favor of Ms. Pruitte if the material facts most favorable to the nonmovant -- the plaintiff --

3

conclusively show that Ms. Pruitte is "entitled to a judgment as a matter of law." *See* Rule 56.04, Tenn.R.Civ.P.  For the purpose of our review, we accredit the testimony of the plaintiff. Hence, we find that Ms. Pruitte was the plaintiff's employer; that she had the unbridled authority to direct the plaintiff's activities while the latter was on the job; and that she was in control of her mental faculties.  Construing the evidence as strongly as possible in favor of the plaintiff, and giving her the benefit of all reasonable inferences, these three stated facts are accepted by us as true.  We have "discard[ed] all countervailing evidence."  **Byrd** at 210-11.  Against this backdrop, we now examine the operative facts pertaining to the plaintiff's fall on March 7, 1995.

Apparently, the plaintiff would usually retrieve the mail for Ms. Pruitte.  On the day in question, it was raining. It was also windy, "but not that hard" according to the plaintiff.  When Ms. Pruitte first asked the plaintiff to go to the mailbox, the mail had not yet been delivered.  Ms. Pruitte asked her a second time when she saw the mailman at or near her mailbox.  The plaintiff suggested to Ms. Pruitte that she wait until it stopped raining.  Ms. Pruitte persisted a third time, pointing out to the plaintiff that "that's what you're getting paid for, to wait on me."  The plaintiff testified that she thought Ms. Pruitte's request was an unreasonable one, but that she went outside because she did not want to upset her.

After the plaintiff picked up the mail, a gust of wind came up unexpectedly, causing her to fall.  The following

4

testimony of the plaintiff is particularly relevant to the events of March 7, 1995:

Q.  Now, what was the weather like when you --

A.  At that time?

Q.  Yes, ma'am.

A.  It was raining.  That's why I got my raincoat and my umbrella.

Q.  So it was raining while you were in the house.

A.  Yeah.  But the wind came in after I got out to the box and started back, just a gush of wind.

Q.  So are you saying that the weather got worse after you got outside?

A.  Right.

Q.  And it got worse because the wind came up?

A.  Yes.

Q.  And began to gust?

A.  Uh-huh (indicating yes).

                *    *    *

Q.  So when you were in the house and when you got your raincoat, it was just raining.

A.  Yeah, just a drizzle rain....

                *    *    *

Q.  But when you left the door to go outside, you didn't know it was dangerous, did you?

A.  Not at that time.  The wind was coming in but not that hard.

Q.  You didn't in your mind say, if I go out this door, I might get hurt.

A.  No, I didn't say that.

                *    *    *

5

Q. That's my point. You had looked outside and you knew it was raining, hadn't you?

A. Yes.

Q. And you could see the weather outside, couldn't you?

A. Yeah.

Q. Is there anything wrong with your mental faculties?

A. No.

Q. You think fine?

A. I'd been out in storms before. And I thought I could put my coat on and rain -- my umbrella and go on like I had before. Because I'd been working with home health before.

Q. So you felt it was safe for you to go out and get the mail.

A. Yeah.

                    *    *    *

Q. So you fell because of the gust of wind --

A. It took the umbrella over my face and blindfolded me.

Q. And then what happened then?

A. I was laying on the concrete.

Q. What about the umbrella being over your face caused you to fall?

A. It come down like that (indicating) over me when I went down. If you was walking along with an umbrella, and the wind -- (indicating) down over your face.

                    *    *    *

Q. If that gust of wind hadn't come up, would you have fallen down?

A. I don't think so, because the umbrella wouldn't have come over my face.

Q. Is that what caused you to fall, the umbrella coming over your face?

6

A. (Nods head affirmatively). I couldn't see where I was going.

Q. And then you fell.

A. Right.

Q. Did you know that gust of wind was going to come up?

A. Not really. I was trying to make it back to the house on account of that storm.

*   *   *

Q. Did she ever do anything to you that would indicate her judgment might not be good?

A. No, not till she told me to go get the mail. I didn't -- I knew I shouldn't go out, but I still wanted to try to be nice to her.

Q. Why didn't you wait until the rain was over?

A. Well, she said, that's what you're getting paid for, and I thought I had to go.

Q. Well, had you ever on other occasions not done what she told you to do?

A. Yeah, a few of them. When she wouldn't put the seat belt on, I'd stop till she put it on. She didn't like to wear her seat belt.

Q. Why didn't you just wait and go after the rain was over?

A. I don't know. It just hit me one of those times.

*   *   *

The plaintiff contends that the evidence can be construed as indicating that the defendant breached her duty to provide the plaintiff a safe place to work. *See **Suddath v. Parks***, 914 S.W.2d 910, 913 (Tenn.App. 1995). She finds this breach in the fact that the defendant directed her to go out in the rain to get the mail under an implied threat of loss of her

7

job.   According to the plaintiff's brief, the defendant "demand[ed] that [the plaintiff] undertake unsafe work conditions."

Taking the plaintiff's testimony at face value, we do not find a breach of Ms. Pruitte's duty to provide the plaintiff with a "safe working environment."  *Id*.   The plaintiff's testimony belies her theory that it was "dangerous" to go outside to get the mail.   She herself testified that she did not consider it dangerous to undertake such a chore.   The facts before us reflect, without dispute, that Ms. Pruitte did not direct her employee to undertake a known dangerous task.   Hence, the facts fail to show a breach by Ms. Pruitte of her duty to provide the plaintiff a reasonably safe place to work.   The facts clearly negate a breach of duty, an essential element of this negligence action.  *See **Haynes v. Hamilton County**, 883 S.W.2d 606, 611 (Tenn. 1994).  *See also **Byrd**, 847 S.W.2d at 215, n.5.

Even if we could construe Ms. Pruitte's demand to be one involving the undertaking of a dangerous employment task -- which we cannot -- we believe that the plaintiff's testimony clearly shows that she understood as much about the hazard of going out during the rain as did Ms. Pruitte.   In our judgment, reasonable minds could only conclude, based entirely on the plaintiff's testimony, that she was at least 50% at fault in proceeding to the mailbox in the rain to pick up the mail.   While comparative fault is typically a question for the trier of fact, summary judgment is appropriate in those situations where reasonable minds could only conclude that the plaintiff was at

8

fault, and that the plaintiff's fault was equal to or greater than the fault of the defendant. *See* JOHN A. DAY & DONALD CAPPARELLA, *TENNESSEE LAW OF COMPARATIVE FAULT*, p. 12-18 (1997).

In the final analysis, there is nothing for a jury to decide in this case. The facts of the incident -- as taken entirely from the plaintiff's testimony -- are not in dispute. Those facts support Ms. Pruitte's motion. They simply do not substantiate the plaintiff's claim that she is entitled to compensatory damages in this case.

The trial court's judgment is affirmed. Costs on appeal are taxed to the appellant. This case is remanded to the trial court for collection of costs assessed there, pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Houston M. Goddard, P.J.

_____
Don T. McMurray, J.