

**FILED**

**February 9, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 7:54 A.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Earl Dwain Willis | ) Docket No.   2016-06-0702 |
| | ) |
| v. | ) State File No. 30458-2016 |
| | ) |
| Express Towing | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Joshua D. Baker, Judge | ) |

---

### Affirmed and Remanded—Filed February 9, 2017

---

In this interlocutory appeal, a tow truck driver sought workers' compensation benefits for injuries to his ankle suffered in a fall as he exited his truck. The purported employer defended the claim on the basis that it did not employ five or more people and, therefore, was not subject to the statutory requirement that it carry workers' compensation insurance. The trial court found otherwise, and the employer appealed. We affirm the trial court's decision and remand the case.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Kitty Boyte, Nashville, Tennessee, for the appellant, Express Towing

Eric Lehman, Clarksville, Tennessee, for the appellee, Earl Dwain Willis

### Factual and Procedural Background

Earl Willis, a tow truck driver, suffered injuries to his left ankle while exiting his truck after returning from a call on March 18, 2016. For purposes of this appeal, neither the nature and extent of the injury nor whether the injury is causally related to the employment are in dispute. Mr. Willis sought emergency treatment and provided timely notice to Michael Copeland, the individual who owned the truck he was driving and who hired him to drive the truck. Mr. Copeland did not have a workers' compensation insurance policy in effect at the time of the accident. Mr. Willis asserted that Mr.

1

Copeland's business was actually a part of the purported employer in this case, Express Towing ("Express"), and that Express employed at least five people, triggering the statutory requirement that it provide workers' compensation insurance coverage to employees.

At an expedited hearing held in July 2016, Mr. Willis, the only witness to testify, stated that Express employed "like 10" individuals and provided a list of names of some of the alleged employees. He further testified that Alan Mann was the owner of Express and oversaw the operation of two tow trucks in the Sumner County area. Moreover, Mr. Copeland owned and operated two trucks in the Davidson County area that also used the Express name and logo.

The trial court entered an order for benefits, finding Mr. Willis to be an employee of Express. Express appealed and, shortly thereafter, requested that the trial court alter or amend its order. We held the appeal in abeyance and remanded the matter to the trial court for consideration of Express's motion. The trial court denied the motion to alter or amend but granted a motion to stay enforcement of its previous order and convened a second expedited hearing. As a result, Express voluntarily dismissed the first appeal.

A second expedited hearing was held in November 2016, at which seven witnesses testified. Mr. Mann testified first, stating that he was the owner of Express and that the business was located in Sumner County, Tennessee. He acknowledged having one employee, James Mullins, and owning two tow trucks. He maintained the business license and the required insurance for Express and acknowledged that he allowed Mr. Copeland to operate a towing business in Davidson County under the license and insurance of Express. On direct examination, the following exchange occurred:

Q:      What is [Mr. Copeland's] relationship with Express Towing? Can you explain that structure?

A:      Basically, he runs my name on the trucks. He's got a couple trucks, too, and he'll run the name, you know, just for advertisement, extra money, stuff like that, and he'll pay me a percentage of what he brings in.

Mr. Mann also testified that the business he operates is based in Sumner County, while the business operated by Mr. Copeland is based in Davidson County. When asked who owned the property on which the Davidson County operation was located, he responded, "I don't know who owns that property, but I know [Mr. Copeland] does rent it." When questioned further about the business in Davidson County, Mr. Mann responded,

I don't really know, because I don't really get into, you know, what he does as far as around the shop and who he has, you know, do things for him, you

2

know.  I know he's got a lot of family that comes down there, you know. He's got a couple people that live on the lot, you know.  I see them all the time.  But other than that, I don't really know who works for him.

Mr. Mann further testified that he receives thirty percent of Mr. Copeland's earnings in exchange for allowing Mr. Copeland to use his business name, license, and insurance policy.  He testified that, with respect to how Mr. Copeland operates his business, he has "no control over what he does with his trucks or who he hires or any tools he has. They're all owned by him, not me."  He further stated that he has "no control over what he does at his business, his lot, who he hires, what trucks he has.  You know, it's all owned by him.  I have no dealings with that."

The testimony of Mr. Copeland was largely consistent with Mr. Mann's testimony. He testified that he does not own a company but that he does own two trucks that he leases to Express.  He acknowledged having had an employee in the past drive one of the trucks while he drove the other truck.  However, at the time of the hearing, Mr. Copeland testified that he did not have any employees.  He agreed that Mr. Mann provides the business name and maintains the business license and insurance and that he pays Mr. Mann a portion of his earnings in exchange for the use of those things, although he testified that he keeps thirty percent of what he earns.[1]

With respect to whether certain individuals were employees as alleged by Mr. Willis, Mr. Copeland denied that they were.  One such person, Ann Tolbirt (often referred to in the record as "Ann Copeland" and referred to by the trial court as "Ann Taubert"), is his girlfriend who helps him out "from time to time."  He acknowledged that he would pay her nominal sums of money when she provided that assistance but denied she was "on the payroll."  He testified that a longtime friend, Cathy Kramer, would also sometimes help out when she needed money.  He described her as someone with "issues" and testified that he would give her jobs to do to make extra money or pay off debts she owed him.

Mr. Copeland also testified with respect to Ronnie Welker, indicating that he was an individual who lives in a bus on the Davidson County business premises and that, as a means of offsetting the cost of keeping his bus on the property, he occasionally performs odd jobs around the business.  He denied paying Mr. Welker for these jobs, stating that anything Mr. Welker does is in exchange for being allowed to live on the property. When asked what Mr. Welker does with respect to the towing business, Mr. Copeland testified "[n]othing really."

---

[1] While Mr. Copeland and Mr. Mann provided somewhat inconsistent testimony with respect to what percentage of Mr. Copeland's earnings each received, that discrepancy was not further explored in the testimony of either witness.  For purposes of our review, however, that discrepancy is not determinative.

Mr. Copeland testified that a mechanic, Irby Trotter, operates on his lot but has nothing to do with the tow truck business. He identified Steve Albright as a longtime friend who will, on occasion, come to the tow truck lot to visit and may ride along with a driver. Mr. Copeland testified that Mike Jarrell also lives in a camper on the Davidson County lot and occasionally answers the phone for him in exchange for access to electricity and water. Mr. Copeland denied paying Mr. Jarrell any money and testified that if either Mr. Jarrell or Mr. Welker stopped performing odd jobs or helping out around the lot, he would not make them move. Finally, the following exchange occurred:

Q:  Do you do – do you operate as a part of Mr. Mann's business at all?

A:  What do you mean by that?

Q:  Would he list you as a co-owner or a business partner or a consultant or anything? Is there anything that he counts on you to do as a part of his business?

A:  No.

Mr. Welker testified that, in exchange for being allowed to live on the tow truck lot in Davidson County, he does odd jobs to help out, such as "sweep cigarette butts or wash a truck and help him cut his grass and things like that." He further stated that he would help Mr. Copeland on his personal property in addition to performing work at the business lot.

Mr. Jarrell testified that he also lives on the tow truck lot, stating that Mr. Mann is the owner of the Davidson County premises. He also testified that he does odd tasks for the business to help out in exchange for being allowed to stay on the property rent-free. He described jobs such as "answer[ing] the phone every now and then, when they need me to. Sometimes I'll release an impounded car, if they need somebody there to do it. I watch the property, mainly."

Mr. Trotter's testimony followed that of Mr. Jarrell, and he indicated that he performs mechanic work on the tow truck lot. He denied being employed by Mr. Mann or Mr. Copeland, explaining that his business license expired and he just performs work for past clients, friends, and family. He acknowledged performing small jobs on Mr. Mann's and Mr. Copeland's tow trucks in exchange for being allowed to use the space at the lot. When asked if he exchanged his services on a regular basis, he testified that he did not because Mr. Copeland and Mr. Mann take good care of their equipment. He testified that the arrangement that allowed him to use the garage at the tow truck lot in Nashville had been made with Mr. Mann and that he did not believe he would be prohibited from using the space on the lot to work on cars if he stopped working on the tow trucks for Mr. Mann and Mr. Copeland.

Mr. Mullins also testified, stating that he works for Mr. Mann and supervises the Davidson County lot for Express. He testified that the Davidson County lot is where he takes vehicles he tows. He also testified that, if he is in that location, he will answer the phone on behalf of Express. When he does take a call in that location, he testified that he contacts Mr. Mann for further instructions. He also testified, however, that Mr. Copeland maintains an office separate from Express, clarifying that he, Mr. Mullins, works "strictly for [Mr. Mann]." When asked whether he knew Mr. Willis, Mr. Mullins stated:

> A:    I've seen him up there at that lot up there, at Express Towing, yes, ma'am.
>
> Q:    What was he doing?
>
> A:    He's drove a wrecker for Mike Copeland.
>
> Q:    Does Mike Copeland have any other employees?
>
> A:    No, ma'am.

Mr. Albright was the final witness to testify. While acknowledging that he had driven wreckers for Mr. Copeland and Mr. Mann at different times, he denied that he was employed by either of them. He testified that he is in a motorcycle club and, as a result, travels frequently, rendering him undependable. He further testified that he had never been paid by Mr. Mann or Mr. Copeland, stating that when he had driven a wrecker for them, it was to fill in or do them a favor. He testified that, shortly after Mr. Willis began working for Mr. Copeland, he rode with him on calls a couple of times to make sure he was capable of doing the job.

After considering this testimony, the trial court concluded that the business operated by Mr. Copeland and the business operated by Mr. Mann were part of the same business enterprise and that the business employed five or more employees at the time Mr. Willis was injured. Express has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision may be reversed or modified if the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)    Violate constitutional or statutory provisions;

5

(B)     Exceed the statutory authority of the workers' compensation judge;
(C)     Do not comply with lawful procedure;
(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015).

## Analysis

Express asserts that Mr. Willis was employed by Mr. Copeland rather than by Express, and maintains that it is not an employer as defined by Tennessee Code Annotated section 50-6-102(13) (2015) because it did not have five or more employees at the time Mr. Willis was injured. Express acknowledges that Mr. Mann and Mr. Mullins were employees of Express, but asserts that the trial court erred in finding Mr. Copeland, Mr. Willis, Ms. Tolbirt, and Mr. Jarrell also to be its employees. Express argues that there was no "contract of hire or apprenticeship, written or implied" to establish any of these individuals as "covered employees" pursuant to Tennessee Code Annotated section 50-6-102(12)(A) (2015).

A.

The trial court determined that the business operating under the name of Express Towing in Davidson County was the same business operating under that name in Sumner County. It is undisputed that the business utilized four tow trucks. Two of the trucks were owned by Mr. Mann, and two were owned by Mr. Copeland. Mr. Copeland operated at the Davidson County location while Mr. Mann conducted business at the Sumner County location. It is also undisputed that both locations used the same business name and the same business license and that all operations were insured by the same insurance policy. Mr. Mullins testified that he would receive phone calls related to the business in Sumner County at the Davidson County location and, when that occurred, he would contact Mr. Mann for instructions. He also testified that he supervised the Davidson County location for Mr. Mann and that when he towed vehicles he took them to that location.

Although there is some evidence contrary to the conclusion that the two enterprises were one and the same, we cannot conclude that the evidence preponderates against the trial court's conclusion that the two businesses were, in fact, a single business enterprise. The trial court's finding in that regard is affirmed.

6

B.

In light of this finding, we have no difficulty agreeing with the trial court that the business had at least four employees - Mr. Mann, Mr. Copeland, Mr. Mullins, and Mr. Willis. An employer must employ five or more persons before being subject to the requirements of the Tennessee Workers' Compensation Law. *See* Tenn. Code Ann. §§ 50-6-102(13), 50-6-106(5) (2015). Thus, we must consider whether the preponderance of the evidence supports the trial court's finding that Mr. Jarrell and/or Ms. Tolbirt were employees.

Mr. Jarrell testified that he is allowed to live on the Davidson County tow truck lot rent-free and that, in return, he performs odd jobs for the business. Included in these jobs are answering the phone, releasing impounded cars, and watching over the premises. Clearly, these tasks benefit the business of Express. While some testimony suggests that Mr. Jarrell's ability to continue to live on the lot was not contingent upon his continued provision of services, Mr. Jarrell testified as follows:

Q:    In return for living on the property [in Davidson County], what is your payment arrangement with Mr. Mann?

A:    Well, I answer the phone every now and then, when they need me to. Sometimes I'll release an impounded car, if they need somebody there to do it. I watch the property, mainly.

The Tennessee Supreme Court has observed that "payment, to satisfy the requirement of a contract of hire, need not be in money, but may be in anything of value." *Garner v. Reed*, 856 S.W.2d 698, 701 (Tenn. 1993). Here, there is sufficient support in the record to conclude that Mr. Jarrell was, for purposes of workers' compensation, an employee of Express. Thus, Express employed five or more people and was required to provide workers' compensation insurance coverage for its employees.

We also note that where, as here, there is conflicting evidence, factual findings often hinge on credibility determinations. As such, "[w]hen the trial court has heard in-court testimony, considerable deference must be afforded in reviewing the trial court's findings of credibility and assessment of the weight to be given to that testimony." *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). While the trial court in the present case did not make express findings regarding witness credibility, it is clear the court resolved conflicts in the testimony in favor of Mr. Willis, which was the court's prerogative. *See Clark v. Willamette Indus., Inc.*, No. E1999-02693-WC-R3-CV, 2001 Tenn. LEXIS 138, at *6 (Tenn. Workers' Comp. Panel Feb. 27, 2001) ("The issue of the credibility of the live witnesses, one of whom was the [employee], was of critical importance to the case. The trial judge clearly made a judgment about this issue, as was his prerogative, and his judgment must be given considerable deference."); *Neas v. Neas*,

No. E2015-00292-COA-R3-CV, 2015 Tenn. App. LEXIS 968, at *14 (Tenn. Ct. App. Dec. 15, 2015) ("The Trial Court, to some extent, implicitly did not credit [a party's] explanation. This was within the Trial Court's prerogative as the determiner of credibility, and we give strong deference to trial courts' credibility determinations."). Indeed, in a brief filed in the trial court, Express asserted that "[t]his case is going to come down to the issue of credibility." We agree.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision at this interlocutory stage of the case. Nor does the trial court's decision violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial court's decision is affirmed. The case is remanded for any further proceedings that may be necessary.

**FILED**

**February 9, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 7:54 A.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Earl Dwain Willis | ) | Docket No. 2016-06-0702 |
| | ) | |
| v. | ) | State File No. 30458-2016 |
| | ) | |
| Express Towing | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 9th day of February, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Eric Lehman | | | | | X | eric@lehmansandifar.com |
| Kitty Boyte | | | | | X | kboyte@constangy.com |
| Joshua D. Baker, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: Jeanette.Baird@tn.gov